Thank you, Greg. Our only argument this morning is the case of Gerald Groff v. Louis De Joy, number 21-1900. Since it's our only argument and since we have as big a circuit split as I've seen during my time on the bench, we're going to be very permissive with counsel on the time limits. I'll just do my best to make sure that both sides get equal time. So with that, Mr. Tutunjian. Thank you. May it please the Court, Christopher Tutunjian from Baker Boss on behalf of the appellant, Mr. Gerald Groff, would like to reserve three minutes for rebuttal. That's fine. In this Title VII case, USPS refused to accommodate Mr. Groff and instead asked him to violate his USPS's undue hardship defense must fail because Postmaster Hess contemporaneously admitted that USPS could accommodate Mr. Groff without any operational hardship. Title VII's text requires an accommodation that eliminates the religious conflict. The plain meaning of the term accommodate is to bring into agreement to reconcile, and that is how the Supreme Court has described the term. In Ansonia, the Court described the term as an acceptable reconciliation of the needs of the employee's religion, the exigencies of the employer's business. And in Barnett, construing the similar phrase in the Americans with Disabilities Act, the Court explained that the word accommodate conveyed the need for effectiveness because an ineffective modification or adjustment will not accommodate anyone. And in Abercrombie, construing Title VII, the Court defined an accommodation to mean nothing more than allowing the plaintiff to engage in his religious practice despite the employer's normal rules to the contrary. Title VII gives favored treatment to religious practices, and a failure to allow an employee to practice their religious beliefs is no accommodation at all. In Title VII, the term reasonably is a modifier that cannot weaken the baseline requirement set out by the term reasonably serves a twofold purpose here. It gives the employer discretion to select among effective options, not necessarily employee's preference, and it also protects the employee from draconian proposals that may diminish their status, their benefits, or impose a burden on them without any justification. And lastly, the undue hardship defense, that's where the employer's it balances a robust initial requirement and employers eliminate employees' religious conflicts, but it does not dilute that robust duty on the part of the employer. Here, the District Court's approach and the approach suggested by the Postal Service conflates with Title VII's text in Abercrombie. The USPS's construction really does not give any independent meaning to the terms accommodate and reasonable, and instead just creates a general duty of reasonableness that conflicts with the Supreme Court's instruction in Barnett, and it also erases the distinction between the reasonable accommodation inquiry and the undue hardship inquiry. USPS candidly admits that an employer's needs are considered at both stages and ultimately collapse the inquiry into one. And this is problematic because it stacks the deck in favor of employers. They are able to force their employees to violate their religious beliefs and at the same time to keep their rules of operation for their business, and that is directly contrary to how the Supreme Court in Abercrombie defined the employer's accommodation duty. Employees' religious beliefs have favored treatment and even neutral policies of employers must yield to an employee's religious beliefs. All right, but even accepting that Title VII provides favorable treatment for religion, isn't it true that the word reasonably needs to do some work? We can't read the word reasonably out of the statute, and in Judge Wilkinson's opinion for the Fourth Circuit, I think he makes this point that the statute doesn't just say you must eliminate or you must accommodate full stop, it says reasonably accommodate. So tell us what work reasonably does in a way that supports your argument, doesn't it? Your Honor, reasonably under our interpretation does do work. It has a twofold purpose. It gives the employer discretion to select among options and also protects the employee from draconian impositions, and I think the Sixth Circuit's decision in Cooper v. Oak Rubber defines that operation very well. There the employer suggested that a religious beliefs by solely using vacation days, and the court said that may eliminate the conflict, but it's not reasonable to force a religious employee to totally give up their vacation days to accommodate the religious beliefs. And turning to the Fourth Circuit's analysis in Firestone, Barnett really cuts against the Fourth Circuit's analysis there. The court explained that accommodate conveys the need for effectiveness, not reasonably. The degree of effectiveness comes directly from the word accommodate and not from reasonably. So reasonably has to be doing something else. It can't dilute the elimination requirements set out by the word accommodate, so it has to have a separate function, and here we propose that the function there is to give the employer a discretion to look at various proposals and to select the one that they prefer, and it also gives protection to the employee. And as I stated earlier, under USPS's instruction, it really just creates a general duty of reasonableness that dilutes that elimination requirement that's inherent in the term accommodate. So your position is, counsel, if we're looking for just looking at the text only, is it your position that the word accommodation requires a total elimination of the conflict, and the word reasonable evaluates the method by which that accommodation, the manner in which the accommodation is offered? Yes, Your Honor, that's correct. That is our position. And so now that the accommodation is offered by USPS here, eliminated the conflict, here the shift-swapping proposal simply reduced the number of days that 630's decision in Cridor is instructed here. So you were asking, counsel, you were asking them that the court determined that the swap shift offered by the employer in this case did not totally eliminate the conflict, therefore we never reached whether it was reasonable or not from your point of view, am I correct? And then I have a second question. Yes, that's correct. Okay, because I think you said in your opening remarks the undue hardship analysis needs to be second, am I correct? Yes. Okay, so you said that the USPS suffered no undue hardship, but the record tells us that there was a memorandum of understanding, that the language limited the circumstance under which the shifts could be changed around, and in this case the employer itself faced a grievance how can we conclude there was no undue hardship in this case? Starting with the MOU, the MOU itself cannot establish undue hardship. The Supreme Court's decision... The breach, the breach of the alleged breach of the MOU is what happened here, correct? Yes, and here that the alleged breach of the MOU does not per se establish undue hardship. The rule in partisan is that a breach of a seniority provision in a collective bargaining agreement can establish undue hardship. Here we do not have the breach of a seniority provision in a collective bargaining agreement. You would agree though that there are other circuits that have looked at breaches of collective bargaining agreements and they're not limited to seniority provisions. The 10th Circuit in Lee had an overtime provision or time off provision that the breach of that was sufficient to be an undue hardship. You're asking us to say partisan only applies if the breach is going to be of a seniority provision. Is that the only way you can prevail on the undue hardship argument is to say that it's limited to breaches of seniority provisions? Your Honor, I think yes. In partisan, they set out a narrow rule and the Supreme Court in Barnett interpreted partisan to put out a narrow rule for seniority provisions. Here there was no seniority provision in the collective bargaining agreement. But even assuming that partisan could be extended to this context, the exemption here would not have violated the MOU at all. The MOU states that management would schedule RCA's and it offered some parameters to how management would schedule, but it didn't prefer to create exceptions and certainly did not create any contractual rights that could be violated here. They simply defined the operating procedures of how to schedule RCA's and the MOU didn't contemplate or address the need for an accommodation. So here, even if partisan were extended to this context, there would be no MOU violation that would create an undue hardship for the Postal Service. So you're reading of the volunteer and the non-volunteers and the exceptions it's included, which basically said if unless you were an employee, you already had the days off around that Sunday or you were going to be in overtime, you're saying that those aren't exceptions to the volunteer non-volunteer listing for scheduling? That's correct, Your Honor. Those were not exceptions. They were simply setting out the standard operating procedures for how scheduling would occur. And it's a mere conflict with standard operating procedures such as these is enough, then Title VII really becomes a dead letter. Collective bargaining agreements are widespread throughout the working world and if this is enough, then the employer is always going to win an undue hardship and an employer's right to receive an accommodation really is dramatically diluted if partisan is extended. I'd like to talk a bit about the economic... Could I put a question to you that I had some thoughts about? How about the essential workers like police officers and nurses, doctors and firefighters and ambulance drivers, restaurant workers? If we were to agree with you and Mr. Goff gets an exemption, do all these other employees, are they entitled to exemptions also? Yes, Your Honor. They would be entitled to an exemption, but the question there would be, would turn on undue hardship. Abercrombie explains that employers' normal rules to the contrary must yield to employees' religious beliefs and so all employees have a right to receive an accommodation. The question then turns to undue hardship and that would be a record-dependent question. Here, the question on undue hardship is the record really does not support that claim. Is Abercrombie an undue hardship case? I didn't recall the court talking about undue hardship in Abercrombie where they were talking about the look policy. I don't even think that was invoked as a defense, that it would be an undue hardship case. Your Honor, the court was defining what it means to offer an accommodation and explained that an accommodation means that an employee is allowed to practice their religious beliefs despite the employer's rules to the contrary. So your answer to Judge Fuente is his emergency services people are folks who always do shift work of the sort he described. The employer's only option is to say it would be an undue hardship. Otherwise, there has to be a total accommodation. If an ambulance worker didn't want to work Friday 6 p.m. to Saturday sundown, the employer would have to give them off or they'd have to show an undue hardship. Is that your position? Yes, and that's consistent with this court's decision in Protos where the court held that sabbatarian observance is the prototypical religious accommodation and Title VII cannot be interpreted to place that religious belief outside the scope of Title VII's reach. And if we have a few more questions, at least I do and maybe my colleagues, I want to follow up on what Judges Fuentes and Schwartz asked you with some hypotheticals. Let's start with what I think is an easy case. Let's say someone's a sabbatarian and they want to be a National Football League official, okay? As I understand your argument, when that person applies to be an NFL referee, and they say, well, I can't work Sundays, in order to accommodate that person, to reasonably accommodate that person, your argument is that person would not be able to be scheduled on Sundays. That person could only be scheduled on Saturday games or Monday or Thursday night games, correct? Yes. All right. But the reason I say it's an easy case is I assume you would agree, maybe not, but the NFL would quickly be able to show that would be an undue burden because almost all the games are on Sundays. The vast majority of the games are on Sundays, and if you're not able to work on Sundays, you can't be an NFL referee, correct? Yes. I think that would be an easy choice for the NFL. Okay. So let's take a little bit of a harder case. Let's say, and I don't know this to be true, I'm just supposing, let's suppose that half of the police killings in the United States occur on Friday nights. Would a Seventh-day Adventist or somebody else who can't work, Orthodox Jew perhaps, someone who can't work, sundown Friday to sundown Saturday, again, I assume you would say accommodation requires that person, that police officer, not be scheduled ever on a Friday night, correct? Yes. All right. But if you accept my hypothetical, that half of police killings occur on Friday nights, in other words, Friday nights are by far the most dangerous night of the week for police officers to work, then doesn't it stand to reason that the New York City Police Department could say, I'm sorry, but if you can't work Friday nights because of religious observance, you can't be a New York City cop? Yes. I think that it would, that would be a reasonable, I think, invocation of undue hardship defense by the police service there. I think the difference here- By taking those folks off the schedule Friday night, you're making their colleagues more susceptible to death or injury by increasing their participation on Friday nights, right? I think the problem there is not necessarily the impact on the coworkers, but the impact on the police department itself, that they would be losing their employees, their police officers to injuries. The key question is whether there's been an undue hardship on the operation of the- Right. Yeah. You're quite right. The undue hardship isn't on coworkers, it's on the business. But let's face it, if the coworkers are in an uproar because of unequal treatment or being put in harm's way, then that, it stands to reason that that makes it hard to run the business, right? Yes. There has to be a strong connection, though, between the impact on the employees and the impact on the operation of the employer's business. The problem here is that- All right. Let me just talk into that on one second, because then if we tweak the hypothetical a little, what I hear you saying, correct me if I'm wrong, is that if there were a police department somewhere where a sizable number of the police officers would rather work Friday nights despite the danger, then your Seventh-day Adventist can prevail and get a Friday night accommodation. You're saying it depends on the facts. Yes. It very much depends upon the record. And looking at the record here, USPS simply has not made a showing of undue hardship. I think, first and foremost, Postmaster Hess admitted in his July 31st, 2018 email that Mr. Groff could be accommodated without any operational hardship. And in fact, the Postal Service rescinded that accommodation so that they could manufacture a claim for undue hardship. And that's consistent with Corporate Representative Gless's deposition testimony that there would be no negative impact suffered by the Postal Service if an extra RCA was scheduled. So there's no contemporaneous evidence of hardships being incurred and there's no after-the-fact evidence. USPS is really relying on hypotheses and speculation that are not supported by documentation in the record. All right, but that doesn't mean, if we agree with you on accommodation, that doesn't mean you prevail here. That just means you're entitled to a remand for trial on undue hardship, correct? We believe that we are entitled to summary judgment on the issue of undue hardship, but we do agree that, at a minimum, there is a fact question. The District Court overlooked a lot of evidence and evidence in Mr. Groff's favor. How could you be entitled to summary judgment from us when the issue of undue hardship wasn't litigated? There are a lot of facts here about undue hardship, aren't there, that would need to be sussed out in the District Court at trial? Yes, at a minimum, there is a fact issue, but we do believe that Postmaster Hess's admission and Corporate Representative Gless's admission are dispositive on this issue. And, in addition, the fact that the Postal Service is relying on speculation and theories that are not supported by any documentation and evidence in the record, whether contemporaneous or after-the-fact. So we believe we are entitled to summary judgment on the issue of undue hardship and that remand for a trial on undue hardship is not required, but at a minimum, that should be the District Court's ruling. Counsel, didn't the District Court rule there was an undue hardship because there'd be a breach of the collective bargaining agreement by the accommodation and then made a few comments about the impact on employee morale? But it did make a ruling on undue hardship, didn't it? Yes, it did make a ruling. Its ruling on the MOU constituting undue hardship was based on a misreading of partisan. I understand your position, Counsel. I just wanted to know whether the Court ruled to make sure that we're all on the same page as to what the District Court did. I know you disagree with the rationale, but I just want to make sure that I'm correct in my understanding the District Court, in fact, ruled on undue hardship and based it on its view of how to collect the MOU. I know you disagree with the ruling. Okay, thank you. Let me ask you a question. What about the Postal Service's accommodation that Joff can take the morning hours off for observance but then report to work, let's say, after 12 or 1 p.m.? That proposed accommodation did not eliminate the conflict. And so, Mr. Groff's religious belief is that the whole of the Sabbath should be a day of rest. And so, taking the day off in the morning to go to services and worship and working in the afternoon does not allow him to totally observe his religious beliefs. And the Second Circuit's position in Baker v. Home Depot is very instructive on that point. And the Second Circuit rejected that proposed accommodation. Is there, sir, in fact, a requirement or a Christian faith requirement that Christian followers are prohibited from working on Sunday all day? Or is this a preference on the part of Mr. Groff? That is Mr. Groff's sincerely held religious belief, and the Postal Service has not contested that Mr. Groff has a sincerely held religious belief regarding observance of the Sunday Sabbath. But to your knowledge, that is not a religious requirement. That's his preference. I believe that that is a core component of the Christian religion to observe the Sabbath, and that is how Mr. Groff observes the Sabbath, by taking a day of rest to worship with his family and congregation. If there are no further questions, I will reserve the rest of my time for rebuttal. Thank you. All right. Thank you, Mr. Kitchingian. Ms. Finkelstein? Your Honors, and may it please the Court. My name is Veronica Finkelstein, and I represent the defendant below, Louis DeJoy, Postmaster General of the United States Postal Service. Your Honors, as crafted by Congress, Title VII represents a careful, deliberate balance which the District Court will enforce, and which this Court should affirm on review. Your Honors, the Hardison case, which you discussed at length with opposing counsel, is binding good law, and it controls both of the issues here. Entry of summary judgment by the District Court should be affirmed for two independent reasons, and Your Honors need not reach both of these issues to decide in favor of Postmaster DeJoy in his representative capacity as the head of the United States Postal Service. That is true for two independent reasons. First, the Postal Service offered a reasonable accommodation, and second, even if it did not, it demonstrated to a summary judgment standard undue hardship. Turning to my first point, Your Honors need not reach the more complicated statutory interpretation question here, because Hardison is binding Supreme Court precedent on point, and despite opposing counsel's effort to split hairs, Hardison and every circuit court to weigh in, including this circuit, in an unreported decision in Miller v. Port Authority, have held that an employer who offers ship swapping has offered a reasonable accommodation. Now, Your Honors, under Hardison, an employer need only offer ship swapping, and the record is clear. It is undisputed, and Brough, through his counsel below, did not dispute that the Postal Service not only facilitated it, and management in the Lancaster Annex, as well as in his own Holtwood Postal Station, went to great lengths to find other carriers to cover for Mr. Brough whenever he was scheduled on a Sunday. The law only requires, per Hardison, that an employer like the Postal Service offer ship swapping, and the undisputed facts show that the Postal Service here has done much, much more. So now I want to address and reflect in specific. Before you move on, let me ask you a question about ship swapping. Doesn't the ship swapping have to successfully eliminate the conflict between the religious practice and the work requirement? No, Judge Hardiman, and this is true for two reasons. First, recognize that the question of whether a reasonable accommodation has been offered is a prospective question. The question is just whether or not the solution proposed by the employer would serve as an accommodation. So it can't possibly require, at least as Congress has drafted in the law, a post hoc analysis, where we look at each individual Sunday and we see whether or not there was coverage for Brough. That's just simply not part and parcel of this requirement that is in your honor, is that every court to consider this specific question, and it is primarily the way that opposing counsel attempts to skirt Hardison. Every circuit that has been asked to decide whether or not an accommodation needs to be perfect in practice has emphatically said no. The Fourth Circuit said no in Miller v. Drennan. The Eleventh Circuit said no in Beagle v. Pilbara. And each of the cases cited by opposing counsel, Crater, Jean-Pierre, McGuire, Cooper, Brenner, Brenner which actually found for the employer, none of these cases stand for the rule that he asked this court to articulate for the very first time. Namely, that even if on paper an accommodation appeared to completely eliminate the conflict, if in practice it didn't work perfectly 100% of the time, then it's not a reasonable accommodation. I don't understand. I mean, accommodation doesn't need to be perfect. I don't know where the word perfect comes in. But what I hear you saying is that if someone can't work Sundays, as long as the employer says, I'm going to give you the opportunity to try to get people to swap with you, that that is ipso facto a reasonable accommodation. Is that your argument? Your Honor, my argument is a bit different. It is, of course, a fact-specific inquiry. As courts have held, if the employer thwarts all efforts to find coverage, so if the employer gives with one hand and takes with the other and says, sure. That's a different, work with my hypothetical. My hypothetical is the employer says, the employee, like Groff says, gets transferred to a new facility, says to the boss, hey, I can't work Sundays. The boss says, well, that's fine. As long as you get someone to swap with you, that's fine. End of story, that's a reasonable accommodation under your view. And if the employee is successful in getting people to swap, then the employee doesn't violate his religious belief or practice. But if the employee can't get anyone to swap, your response is, doesn't matter, good enough. Your Honor, I agree that that would be a reasonable accommodation under either the Postal Service's definition or frankly. One case said that I can't find a single case where an employee was given the opportunity to get shift swapping but couldn't find anyone to swap. I can't find any cases that say that is always a reasonable accommodation. And the reason I think it's important here is, if we look at the facts of this case, you would agree, would you not, that rural carrier associates, RCAs, had to work Sundays. That was part of the job description, wasn't it? Absolutely. So Groff can't work Sundays. You agree that that's his sincerely held religious belief, right? The purpose of the summary judgment, the Postal Service did not challenge that. All right. So RCAs need to work Sundays, but Groff can't work Sundays. There's an easy solution here. If I'm running this postal operation, I solve the problem easily. I schedule RCAs on Sundays, but I don't schedule Groff on Sundays. Problem resolved. Groff doesn't work Sundays. The RCAs that I schedule on Sundays are expected to work Sundays. They know they have to work Sundays. This is the polar opposite of forcing someone with seniority, like someone in Hardison, who has a seniority right not to work on Sundays and forcing them to work on Sundays. That's what Hardison's guarding against. But here, we seem to have the opposite because RCAs are expected to work Sundays and they don't have seniority rights. So what's the problem? So I disagree with the part of Your Honor's analysis that if Groff is simply skipped on every Sunday that this is all right. The problem, Your Honor, and perhaps the reason why you're not finding circuit court cases that delve into this question is that skipping him in violation of the motorandum of understanding quite obviously poses an undue hardship. So the analysis- Wait, wait, wait. Hold on. Undue hardship's a level two analysis. I want to talk about that with you, but I'm focused on the accommodation issue. The rubric that I'm positing here, if it is in fact expected for RCAs to work on Sunday, and if all of Groff's colleagues could have been required to work on Sunday, but he's not because of Title VII, then we just move to the secondary analysis, which is your client has the opportunity to come forward and say, this is an undue hardship on the Postal Service, and let me show you why. I'm not negating that you might be able to prove that, carry your burden in spades on undue hardship, but what I'm trying to get to is the issue of accommodation, which, and maybe you disagree. Maybe you think this is not a level one, level two thing, but the way I read the statute, the first question is, what is the accommodation? If it's a Seventh-day Adventist, we've got several cases out there. They can't work sundown Friday, sundown Saturday. In this case, we have a Sabbatarian. They can't work Sundays. I'm looking at a record here with a bunch of people who are supposed to work on Sundays. Groff is supposed to work on Sundays as an RCA, but he can't work on Sundays because he's a Sabbatarian. Isn't the easy accommodation here to not schedule Groff on Sundays? I would respectfully disagree with your honor characterization of the MOU and the role of a Rural Carrier Associate, and if your honor doesn't mind, I would liken it a bit to your football analysis. The role of a Rural Carrier Associate, per the Memorandum of Understanding, is to work on a rotation on Sundays, an equal rotation to deliver Amazon packages. If Mr. Groff does not work on any Sundays and he is exempt from Sunday work, it is not like your honors football example where there are games being played on different days of the week. The Amazon Sunday delivery that Mr. Groff, as a Rural Carrier Associate, is being asked to complete is primarily, and in some cases, likely completely on Sundays. So it's not the job of an RCA simply to be available to work on Sundays, but per the Memorandum of Understanding, work on a rotation with the other Rural Carrier Associates to deliver Amazon Sunday packages. That's an easy win for you. Mr. Tutunjian conceded. I don't know why you're discarding my NFL analogy because I think it helps you win. If delivering packages on Sunday is a bona fide occupational qualification to be a Rural Carrier Associate, then you have a slam dunk win on undue hardship, right? It's like, look, sorry, if you want this job, you got to work on Sundays, but that's an undue hardship evaluation, not an accommodation issue, right? Because telling somebody who can't work on Sundays, don't worry, you can go to church and then report to work, that's not an accommodation, right? Your Honor, there are factual contexts that explain why the Postal Service offered these additional methods to Mr. Groff. The accommodation that we're discussing on appeal and that the reasonable accommodation was the shift swapping. I agree with Your Honor that once the Postal Service learned more details about Mr. Groff's religion, it became clear that allowing him to come in late or giving him another day off was not going to be acceptable to him. So, Your Honor, it's not that I wouldn't defend in the abstract that they could be reasonable accommodations, but I think factually there's a reason here why they were offered when they were, and that the ultimate reasonable accommodation that was offered was the shift swapping. I agree with Your Honor that the football analogy is on point. I think it's incredibly helpful for the undue hardship analysis. I simply point out here that the role is even a bit more narrow than in your football analysis. It's as though Mr. Groff applied for a job to referee Sunday football games only, and then indicated that he couldn't work on Sundays because of his religious objections. But, Your Honor, there are no cases that stand for the proposition that opposing counsel asks you to accept on reasonable accommodation. Namely, that shift swapping, where it would completely eliminate the conflict on every day that the employee has a religious practice, as it would here, anytime there's coverage, Mr. Groff can have the entire Sunday off, is not a reasonable accommodation because, in practice, it was not always able, it was not always possible for the employer, acting bilaterally without cooperation from the employee, to find coverage every single Sunday. I'd like to ask you a question about some language in one of our cases. The district court suggested our court never spoke in any way about whether a total elimination was necessary. Are you okay? The lights appear to have gone out. We have energy I probably saved a branch of a tree just then. I apologize. Judge Schwartz has amazing powers, but I've not seen her yet, you know, turn out the lights. That was a Harry Potter level of magic, Your Honor. What I was saying was that, apropos of what you just said, and in response to some of your you don't do a retrospective look to see if the accommodation works. I want to read some language from one of our cases that the district court didn't take into account when it said this court has never spoken on the subject. The case is Getz versus Commonwealth of Pennsylvania Department of Welfare. It used some of the language that Judge Hardiman just talked about using the word successful. So I'm going to read you a clause from that case. It says, the plaintiff establishes the prima facie case, burden shifts, and now I'm going to read, to the employer to show that made good faith efforts to accommodate, and if such efforts were, past tense, unsuccessful, then it is unable to reasonably accommodate without an undue burden, close quote. So I take that language to convey that our court has already said the accommodation that needs to be offered must be one that would be and has been successful, and if and only if it is unsuccessful, do we then turn to undue burden. I'd like to ask you, how do we overcome that language? It's very, it's identical to the language Judge Hardiman asked you about, and it's contrary to what you said, which is employers can offer an accommodation, but if it doesn't work, oh well, and I don't think you actually mean that. So how do you, how would you overcome the get unsuccessful requirement, which conveys to me it's got to be an elimination of the conflict. Your Honor, I hope I didn't come off as that glib. Of course, the Postal Service takes very seriously Mr. Groff's religious concerns and did what it could to try to accommodate him. I would read that language a bit differently than Your Honor does, especially in light of Hardison and other Supreme Court precedent that was quite clear that the requirement is forward-looking and the language of the statute, which doesn't say analyze whether the accommodation offered worked in practice, nor did the EEOC rank suggest any of that. I would read that language that Your Honor quoted a bit differently to suggest that if the employer comes up with a series of options and proposes those options or even one option to the employee, and the employee says, no, that option still won't work. So the employer comes forward and says, we'll switch you from Tuesdays to Wednesdays. And the employee says, no, I actually, it turns out I've got a religious objection on Wednesdays too, or there's some other reason why I can't work on Wednesdays. That in that case, the analysis is at an end in terms of whether or not the employer can find a reasonable accommodation. Moreover, Your Honors, here, if Your Honors wish to talk about the statutory interpretation, a lot of these questions that you're asking are predicated on this assumption that there has to be complete elimination. And as Your Honors know, that is not how the Postal Service reads Title VII. And frankly, we don't believe that's how the Supreme Court has read Title VII. How do you overcome, counsel, how do you overcome the EEOC's compliance manual, which says an adjustment offered by an employer is not a reasonable accommodation if it eliminates the conflict and then proceeds to cite the five circuit cases? So it seems to me, in looking at the law, the circuit courts are saying total elimination is what is needed in order for the accommodation to be reasonable. Again, that's step one. How do you get around the EEOC compliance manual? Your Honor, the EEOC compliance manual says that. It also would direct summary judgment for the Postal Service on the undue hardship step of the analysis. But Your Honors, you don't begin statutory interpretation with an EEOC guidance manual, which isn't a formal notice and comment regulation that would get Chevron deference. You begin with the language of the statute. I agree with you, counsel, 100%. So let's do what we did with your adversary. Tell us what the word accommodation means. Tell us what work the word reasonable does, textually. Yes, Your Honor. The word reasonable connotes a matter of degree, just like it does in the context of reasonable doubt, reasonable suspicion, or the reasonably proven person. It does not connote, as opposing counsel suggests, choosing from a menu of options. He's offered you no definition that would give you that definition of reasonable. Rather, we would suggest, Your Honors, use the definition of reasonable in the circuit courts that find in favor of the employer in these are enforcing the Supreme Court's own language in Antonio, which said that this is a matter of degree. And then as to an accommodation, I don't think there's actually that much of a disagreement. I'm sorry. Let me interrupt you before you go on to accommodation. I'll let you get there. But following up on Judge Schwartz's question, if it's a matter of degree, doesn't that mean that for an Orthodox Jew or a Seventh-day Adventist, that the employer could say to them, look, I know the sun goes down in the winter at, you know, five o'clock, but I really need you here till six. And, you know, you can work the extra hour. I'm going to give you 23 hours off during your Sabbath. And you're going to work till six, and then you go to temple or go to your services Seventh-day Adventist service. And I mean, under your theory that it's a matter of degree, 23 hours out of 24 on the Sabbath is plenty good enough. But I'm quite confident that an Orthodox Jew or a Seventh-day Adventist would say, no, sundown means sundown. And even though the sun goes down earlier in the winter, that means I got to be, you know, out of work by sundown. And your honor, I would agree with you that likely the employee would not be pleased at being offered a 23 out of 24 hour accommodation. But it's not, what I'm positing, I'm suggesting that's not an accommodation. I mean, these, let's face it, these religious practices, these religious beliefs are, they're kind of non-negotiable, right? I mean, another matter of degree would be, look, I know your faith is important. I know your church meets at 10 o'clock on Sundays. I'm going to give you off. I know you're supposed to report at eight in the morning on Sundays. I'm going to give you from eight until noon off. So you can, you know, get up, go with your family, go to services at 10, and then be to work at noon. Under your sliding scale, that's plenty good enough, but it's not an accommodation, is it? Your honor, that is essentially espousing the complete elimination standard. And perhaps that would be a wise standard, but it's not the one Congress chose. Congress didn't use the word complete. Congress didn't use the word perfect. And more importantly, Congress didn't use other words that are synonyms for complete or perfect or whole. So your argument is the Postal Service can make Orthodox Jews work until six or seven at night, even if the sun goes down at five. I think, your honor, it's a fact-specific analysis. It depends. There's lots of complicating factors at the Postal Service. Full-time career carriers bid on a specific route with specific hours. They have contractual rights not to be- Take all those variables out of my question. Assume all things are equal. The shift is is nine to six or 10 to six, and the sun goes down at five. You're telling us that the Postal Service can force them to work until six o'clock, even if the sun goes down at five. Under the law, your honor, if the accommodation that's been offered is reasonable, yes. But you're begging, I guess I'm suggesting you're begging the question by saying it's reasonable. Or maybe you're telling me it is reasonable if it's only one hour after sundown that's reasonable. That's your argument. I'm suggesting to your honor that like virtually every other term in Title VII, it's fact-specific. It's not binary. It is not a thumbs-up, thumbs-down question. It's a fact-specific analysis. And frankly, that's the language that Congress chose. That is recognized by the EEOC as well, although admittedly they would bring these facts in at a different stage of the analysis. But this complete elimination standard is rejected by the Supreme Court in every case to consider similar language, Southeastern Community College, U.S. Airways versus Bennett. It's grounded in the language from Ansonia versus Philbrook, where the court recognized that there's a balance. And so your honors would be creating a definition that might seem logical to you and perhaps would be great in practice and would tip the scales differently when balancing the interests of the employee and the employer. May I ask one question? There was an accommodation that was offered here, which is that Ralph can take the morning hours off for observance, but then he would have to report by 12 p.m. So he has essentially the entire morning for religious observance, but then has to report to work. He says that's not enough because I need the whole day for observance. So I'm wondering if you could comment on that, whether we should accept his view as opposed to the Postal Service? Your honor, at the summary judgment stage, the Postal Service didn't dispute that Mr. Groff has a bonafide religious belief or the contours of that belief. If the case were to have gone to trial, perhaps that would have been challenged, but it wasn't on summary judgment. And so where the plaintiff had made out that prima facie element for purposes of evaluating the accommodation, we were comfortable with the district court and we're comfortable with this court considering the whole package of accommodations, which includes the shift swapping or focusing on the shift swapping itself. I'll point out to your honor that there are factual reasons why that was offered. I understand your point a little bit better. So you say that what he requested is okay, that he can work. I'm sorry, he can go at the Postal Service, this recommendation. You have the entire morning for observance, but by 12 o'clock you must show up here to do your postal duties. You find that acceptable? It was acceptable because at the time it was offered by the Postal Service, they didn't have a formal reasonable accommodation request, nor did they understand the specific contours of Mr. Groff's religion. It was only after he met with labor relations, an individual who happens to be an ordained minister, and articulated specifically that he was a Sabbatarian who believed the whole needed to be exempt from secular work. At that point, they understood that the coming in late accommodation that had been offered to other employees and been satisfactory wouldn't be acceptable to him. And at that point, shift swapping was offered as an additional accommodation. He was, of course, welcome to accept coming in late, but for purposes of summary judgment, we'll concede that that would not have met his religious beliefs, at least as he articulated them. All right, let me get you to answer the part that you were going to answer before I interrupted you with my question. Sure. And that brings me to my second point. I was going to point out to your honors that if you find anything troubling or difficult to determine or find that there is some kind of gap in the record, although the Postal Service would disagree, I'll point out for your honors, these are cross motions for summary judgment. So both parties were disputed back. But if your honors were for some reason not to find for the Postal Service on the reasonable accommodation analysis, it is a very easy case to find for the Postal Service in a firm summary judgment on undue hardship. Here, there is much more than the very low threshold of the minimum cost that was articulated by the Supreme Court in Partisan. Let me start with the simple ones that were not disputed before I turn to the collective bargaining agreement, which truly is the only one disputed by opposing counsel. It is undisputed that overtime costs were expended as a result of Mr. Groff being unavailable to work, at least during the peak seasons when he was delivering out of the Holtwood station. It is undisputed that there were fewer days off for other employees if he would skip on every Sunday. It is undisputed that when he didn't work on Sundays, it meant that the other carriers had to deliver more mail. They had longer, more dangerous delivery routes. And it is undisputed that Mr. Groff, who for a period of time was accidentally skipped on some Sundays due to a miscommunication with a new supervisor in the Lancaster annex, that during that time it caused chaotic personnel problems that affected the operations of the Postal Service. There was a grievance filed. There were other employees who quit or transferred to other stations. And that union grievance, your honors, brings me to this violation of the collective bargaining agreement. Now, opposing counsel suggested to you that violation of the memorandum of understanding would not necessarily constitute a breach of the agreement. That simply skipping Mr. Groff on every Sunday was acceptable. The union in the grievance that's part of the record below disagreed. The union found in favor of the employee who skipped. The union's position that skipping Mr. Groff, simply not putting him in the rotation for Sundays, was a violation of the memorandum of understanding. But there's actually multiple collectively bargained agreements here, including ones that can be viewed as having some seniority provision that would be violated when Mr. Groff was skipped. Is that in the record? Counsel, is that in the record? Yes, your honor. The record is clear and undisputed that Postmaster Hess from the on some Sundays when Mr. Groff didn't work and he had only one other rural carrier associate that Postmaster Hess had to deliver the mail violating the union. I recognize that, but did he testify that that his, him going out himself and delivering the mail violated the collective bargaining agreement? I'm aware of the testimony that he said he did it. Is there, did he testify, because I know the other collective bargaining agreements are not in the record. Did he testify that was a violation? Yes, he did testify that it was a violation, that it could be grieved, and that is because full-time career carriers with their seniority have the right to have all of the hours of delivering mail allocated to them first, and then the hours that they can't deliver allocated to the part-time relief carriers, and that there's a very limited amount of work that supervisors, postmasters, and other managers are allowed to do, and it doesn't include delivering the mail. Postmaster Hess was clear in the record that on every Sunday that he delivered mail because he was short-staffed in the Holtwood station, he could face a grievance from a full-time career carrier. But what I want to end with when it comes to undue hardship, if your honors don't have different questions, is this narrow reading of partisan proffered by opposing counsel, and that is that partisan only applies to a seniority provision in a collective bargaining agreement. As you're undoubtedly aware from the postal services briefing, we disagree. The language in partisan does at times talk about seniority, but it also talks about the value of contractual rights. The mere fact that partisan happened to involve an agreement that had aspects of seniority does not mean that the reverse is true, that the rule only applies in the context of seniority agreement. And I'd point your honor... But it probably means it's an open question, right? I mean, all we know for sure from partisan is that if in order to accommodate one's religion, you violate the seniority rights of a co-worker, the employer does not need to do that. That's the holding in partisan, isn't it? I agree with that, your honor, and I would point out that the disputed facts were that in the Holtwood station, where at times there was only one other rural carrier associate aside from Groff, having another carrier come in to deliver the mail from that station would have violated a seniority agreement that allowed full-time career carriers to have set routes and only deliver on their scheduled route, which did not include Sunday. But your honor... All right, let me... I wish I had a clear understanding of this, but tell us the chain reaction. Tell us, first of all, how many days a week the RCA's worked, and then tell us the sort of bad or difficult chain reaction that would ensue if others were scheduled on Sundays in Groff's place. Sure, your honor. I'll use the Holtwood station as an example during peak season. There was a peak season when there were only two rural carrier associates in the entire station, Justin Tichelli and Gerald Frost. They were the only two. They worked a flexible and varying number of hours each week. They could work overtime. That was up to the management of the post office to decide if that was necessary. Their job was to fill in throughout the week as necessary when other full-time career carriers were not able to deliver the mail. So on a Groff day, the day off of a full-time career carrier, an RCA might cover that full-time career carrier's route. Or if a career carrier had to take off two hours and put in sick leave to go to a doctor's appointment, the rural carrier might be asked to come in and work those two hours. Or if there were just a lot of mail that day, a lot of packages, the rural carrier might be asked to come in and help relieve some of the work for the other carriers who were scheduled that day. So it's not a guarantee of hours, a fixed schedule. They work as needed based on the needs of the operation of the post office. On short notice, might they get called in on 12 or 24 hours notice? Or less, your honor. Day off, often. Midday, sometimes. And Mr. Groff often did come in and work with short notice like that. Is that different than the ARC position? Because the ARC position are the people who only work Sundays and holidays. Am I correct? Different job. Yeah, it's a totally different job. The Associate Rural Carrier was a new job title that was created because of Amazon Sunday for people who were exclusively going to be working on Sundays. They had to be available and come in and work the whole day on Sunday. And that was the entirety of their job. Rural Carrier Associates do a bit more. So let me play out for you the hypothetical and that chain link of events you were asking for. It's peak season in Holtwood. Justin Ticheli is the only Rural Carrier Associate other than Groff. Postmaster now has, and he's got enough mail, because this often happens, that it takes more than one person to deliver. Or else Mr. Ticheli is going to be delivering late into the night, possibly injuring himself. And indeed, this station had employees get injured because they were out delivering the mail at dark on these long, hard, busy Amazon Sundays. So now Postmaster Hess has a couple choices. He could spend hours trying to call other mail carriers day of or short term to try to see if he can get them to come in. If he can get them to come in, he's- Who are those mail carriers? Are they RCAs? Not in this station. He can call other stations and see if there's other RCAs available from that station. He can ask full-time career carriers to work on Sundays. He can't force them for the union agreement, but he can ask them. Well, that would run into hardest. You're on solid ground on Hardison there, right? Because those full-timers have collective bargaining orders. But if the Postmaster had the opportunity or the power to call in other RCAs and it's peak season between Thanksgiving and Christmas on these Amazon Sundays, wouldn't a reasonable manager just assume that Ticheli couldn't handle the Sunday work? And instead of giving people only 12 or 24 hours notice, wouldn't the Postmaster a week in advance schedule RCAs from other regions to help Ticheli out to work on those Sundays in lieu of graft? That seems like an easy fix. Postmaster Hess did not have the ability to force rural carrier associates from other stations to come work at Hopewood on Sundays. It was impractical for lots of reasons. They were Thanksgiving, right? There's a lot of packages being delivered everywhere. And Postmaster Hess didn't have the right to override the Postmaster in that home station. All right. So the whole problem is that there are too few people. But that sounds like a slam dunk on undue burden, right? What I'm hearing you say is that at the very least during peak season, Ticheli couldn't possibly handle the Sunday workload, correct? That's correct. There were times. All right. Well, then if Ticheli can't possibly handle the Sunday workload and Graf's the only other one available, now you're right in the heartland of NFL referee not working on Sundays, right? I agree. I agree. I think it's a good analogy. I think it's even more difficult. You should win that on undue burden, step two, consistent with EEOC guidance, not by fudging what an accommodation is, right? Because you've admitted for purposes of summary judgment only that he had to take all day Sunday off. So when you tell him he has to work Sunday, you're not accommodating him. But you clearly, based on the facts as you're describing them, you clearly have an undue burden. But I don't see that in the record. This very educational recitation that you've given us, I don't see that in the record anywhere. I didn't come away from the briefs and the record that this was a situation where Ticheli was essentially hung out to dry if Graf didn't work on Sundays. I didn't get that from the record. Is it there? Your Honor, all of this evidence was put before the district court. It wasn't necessarily the specific ground that the district court chose to use in its analysis. The district court did, as Your Honor has pointed out, focus more on the violation of the collective bargaining agreement. But Your Honors can affirm on a different ground. And the evidence is indeed supported by the record. And it's undisputed. Mr. Graf, during the deposition, and these experts are also attached to the government's opening motion for summary judgment, he admitted that he never worked on Sundays. He didn't know how things were handled. He didn't know whether overtime was extended. Didn't know who did the work for him or how long it took. And so he couldn't dispute any of these facts. What Appellate Counsel is focusing on is that during depositions, non-lawyers were asked legal conclusions. They were asked, was this an undue hardship? And as non-lawyers, they didn't really know how to answer that question or answer it necessarily articulately. And that does not mean that there are disputed facts in the record or that the Postal Service didn't prove undue hardship. I agree wholeheartedly with you, Judge Hardiman. There's a short, easy path to affirm here. It's that there was ample evidence of undue hardship that meets the hardest and de minimis standard. And, Your Honors, you need not delve into any of the more difficult questions along the way, like the statutory interpretation or even the violation of the collective bargaining agreement, because the Postal Service amply met the standard under summary judgment. And for that reason, Your Honors should affirm this District Court below. I'm happy to answer any other questions. If not, I will thank you, Your Honors, for your indulgence with the light as well as for the additional time. Judge Hardiman, I do have one other question, if I might. Of course. Thank you. Counsel, you said that in two Supreme Court cases, Southeastern Community College and U.S. Airways, the Supreme Court rejected total elimination. Can you tell me what language in the opinion you're relying upon for that representation, where the issue was presented and they rejected total elimination of the conflict? And were they both religion cases? They were not religion cases. They are disability cases. But the language is the same in the Rehab Act and the ADA. This reasonable accommodation standard gets carried by Congress through all of the anti-discrimination statutes. So it's the same standard, but a different statute. Southeastern Community College, the Supreme Court said that the question of what's reasonable is exact, specific analysis. That in that particular case, the deaf employee who wanted complete accommodation for her lack of hearing in the educational program, that it might be reasonable for the program to offer her something less than the complete accommodation she was offered. And U.S. Airways versus Barnett is even more on point, is that the issue of complete accommodation was squarely raised in that case. It sort of decided along the way on Southeastern Community College. But it's squarely raised in Barnett. And Barnett said the same thing that the Postal Service urges this court to say, that it's not a binary test. It's a matter of degree. And so what might be reasonable for the NFL that has, now I'm in dangerous territory, hundreds of referees, maybe? I don't know. What might be reasonable for an employer that has hundreds of employees might be unreasonable for an employer that has two. And during off-peak season. If we can go back, I'd like to stay with the cases just so I understand how you can lean on them so heavily. Southeastern Community College, it sounded to me the way you described it, that that was a case where the employee's preference doesn't rule. It's not a case about total accommodation. Correct? Yes, Your Honor. I agree. It was the student suing the program she was applying to. I'm sorry. But you have to take the plaintiff's preference to accommodate. That's what Southeast Community College says, correct? Correct. But I also believe that it stands for the proposition that this is a non-binary, non-thumbs-up, non-thumbs-down kind of analysis, which the complete elimination standard proffered by opposing counsel is a binary, thumbs-up, thumbs-down. I understand. Or it's not reasonable. Barnett is more squarely answering the question that is now issued before the court. One additional question. Gross seems very, to me, seems very, very sincere that when he says that the teachings of his religion say that Sunday is a day of rest and a day of worship. So why isn't his position well taken? And why shouldn't the Postal Service acknowledge or at least consider seriously his request to be off on Sunday? I have no reason to doubt Mr. Gross' religious beliefs. It's not challenged by the Postal Service in this litigation in any way. The reality is, Your Honor, that that isn't the rule that Congress prescribed. It might be a preferable rule. It might make sense for an employee like Mr. Gross, who everyone agrees is an excellent employee and very valued by the post office. But it's simply not the legal standard. And the Postal Service should not be held accountable for meeting the legal standard, but not meeting a standard that perhaps Congress could amend and add to Title VII, which Congress has declined to do in many, many years, despite numerous opportunities to do so. Is the Postal Service's position that we cannot logistically accommodate this individual? Or is it that we just don't have the resources? What exactly is the basis for their position? Their position is that accommodating him by skipping him on every Sunday would pose an undue hardship. It would have more than de minimis costs on the post office. In other words, they cannot get somebody else to do the work that Mr. Goff would otherwise be required to do? They don't even, Your Honor, they don't even need to meet that height of standard. But on peak season in the Holtwood Station, that practically factually is the truth. They only need to show that it would be more than a de minimis hardship. And they've shown that it would be more than de minimis in a myriad of ways. And because it's an unreasonable, because it's an undue burden, it's an unreasonable accommodation? We believe that the accommodation issue stands alone. But that's, so that's the problem, that's the problem with those five circuits. I mean, with all due respect to Judge Wilkinson and others, I mean, when I read those five opinions that support you, when you say it doesn't require elimination, they seem to conflate reasonable accommodation and undue burden almost as if it's some sort of dialectic between the two. And I'm not sure that's right, because it might be sequential. It might be what is required to accommodate. Let's define that. And then let's see if it's an undue burden. I think it's tempting to analyze them concurrently, because the facts are the same often. The reasons why an accommodation might not be reasonable for a particular employee and employer are often the same reason why additional accommodations might cause undue hardship. I do agree that they are two separate analyses. I think both of them involve a sliding scale, and that's where opposing counsel goes wrong, by suggesting that the scales have to tip almost completely in favor of the employee on the first analysis, and then by simply disputing the facts that are undisputed on the second. But I do agree with Your Honor, this is an interesting circuit split. Your Honors are going to, you know, break a tie, and I don't think that any of the analysis is completely satisfactory in terms of doing a really detailed statutory analysis. But luckily for Your Honors, I don't think you have to get there in this case, unless Your Honors choose to. And even if Your Honors were to do that analysis on reasonable accommodation and find in favor of Mr. Groff, I think the net results would be the same. It would be affirmance of the district court below on the undue hardship part of the case. Wonderful. Thank you very much, Ms. Finkelstein. We'll hear the rebuttal from Mr. Titumjian. Your Honors, I'd like to make two points on rebuttal. The first is that partisan is limited to seniority provisions, since those are expressly exempt from Title VII. Congress chose to address seniority systems, and the term undue hardship must be understood alongside that special exemption. Otherwise, this court will be creating new exemptions beyond what Congress considered, and there's no textual indication that any other type of provision that may appear in a collective bargaining agreement should receive special treatment like a seniority system does. The second point I'd like to make is to focus on the district court. I think once we get past the CBA issue, we're dealing with numerous fact issues that have been presented on appeal with no evidence in the record contemporaneously or after the fact, and no analysis from the district court on them. To the numerous fact issues that my colleague raised on overtime, safety issues, personnel problems, I would remind the court that in his July 2018 email that there were no operational hardships being incurred by the Postal Service when Mr. Groff was being accommodated, and that undue hardship could only occur if he was scheduled on a Sunday and the Postal Service had to find someone else to take his place. What's your response to Ms. Finkelstein's point that essentially we're at the station during peak season, and I forgot the other gentleman's name, that he couldn't possibly handle all the deliveries during peak season on these Amazon Sundays? My response to that is Postmaster Hess and his deposition as well as Postmaster French were emphatic that they satisfied their duty under the Amazon contract. They got the packages delivered and they satisfied their contractual obligations. Yeah, but maybe they satisfied their duties because they underwent hardship to do so, right? If people had to work 15-hour days, if the postmaster himself had to go deliver packages, those could easily satisfy the USPS's burden of showing undue hardship, couldn't they? Well, the undue hardship is a question of how the employer's business was impacted, and here the conduct of the business is not impacted if they were able to get the packages delivered. Wait, wait, wait. You're saying as long as the packages were delivered, it ipso facto was not an undue hardship? Are you suggesting that sometimes postmasters or other workers don't bend over backwards at great hardship to themselves? That old phrase, you know, rain, sleet, snow, or hail? I mean, how is that not a hardship? Your Honor, I was speaking specifically to the imposition on Mr. Teckley, the other RCA at the Holwood Station during the 2017 peak season. There's no indication that the Postal Service was unable to get the packages delivered when there was just one other RCA there during the two peak seasons that Mr. Groff was with the Postal Service. Right. If Teckley did deliver the packages, but he had to work 15 hours that day, are you suggesting that that is not an undue hardship on the business? And that the postmaster would have morale issues and management issues and safety issues? Yes, a couple of responses to that. First, I would say that the text asks for the hardship beyond the conduct of the employer's business and that there must be a strong connection between the imposition on the employees or their morale and the impact on the business. Otherwise, Title VII is subject to a heckler's veto where any co-worker can not being granted. It's a heckler's veto if Teckley is jealous or envious that Groff has Sundays off. It's not a heckler's veto if Teckley has to work, you know, seven hours of overtime in the dark under great pressure to deliver packages. That's not a heckler's veto. That's a substantial burden on Teckley and the operation of that station, isn't it? Yes, Your Honor. I would also point to the MOU itself discusses that during the peak season that RCAs would be drawn from each specific station but that a postmaster could borrow leave replacements from another from another station. That's at page 675 of the appendix. And so it's not, it wasn't the unavoidable consequence that Mr. Teckley would have to work every Sunday. There were possibly to deal with that and address that but those were not offered here. Counsel, could I ask you for your response to your adversary's statements that the Barnett U.S. Airways case, the Supreme Court rejected the requirement of a total accommodation. What's your response to that? I think that's an incorrect reading of Barnett. The court was very clear, pardon me? I said why? Yes, the court was very clear that the term accommodate conveys the need for effectiveness. There the employee was trying to reasonably accommodate to preclude the employer from having discretion and so they proposed that reasonably connotes effectiveness and the court said no, accommodate delineates the effectiveness requirement and then reasonably gets into other considerations not pertaining to effectiveness. So I think the Supreme Court and Barnett squarely held that the effectiveness requirement comes from the term accommodate itself and not anywhere else. Thank you. Can I ask you, sir, over a period of I think it was two years, Mr. Groff missed about 26 or 27 scheduled deliveries which I would imagine imposes a great burden on his colleagues at work and other postal workers. Why shouldn't that be a major factor in our consideration? Sorry, I'm having a little bit of trouble hearing you. Can you hear me now? Yes, I can. He apparently missed 26 days that he was scheduled to work on Sundays which in my view would impose a great burden on other postal workers. Why shouldn't we take that into consideration? I think two responses, I would refer you back to the text of the statute that requires an impact on the business and not on employees. The second, I would point out that at most the enhanced burdens were really only incurred during the peak season so for just a few weeks out of the year and that is a de minimis burden for just a year and that would not rise to the level of being more than a de minimis cost as required bipartisan. All right, let me ask you one other, it's just a thought. In the Christian tradition it's of course appropriate that you go to mass, you go to church every Sunday and mass, church usually is before noon, early in the morning, etc. and your client takes a position that yes, I can do that but I want the whole day off for religious observance. Why should his view prevail when in the Christian faith you don't really necessarily have to take the whole day as a day to observe. Church services really conclude very often at 9, 10, or 11 o'clock and he needs that. And by the way, as you probably know, he was asked to report, he was given some leeway and asked to report at 12 o'clock and he failed to do that. Your Honor, I think that Congress in Title VII answers that question. There's a requirement of a sincerely held religious belief and the government does not dispute that Mr. Groff holds a sincerely held religious belief that he must abstain from work for the entirety of Sunday and for Mr. Groff that includes worshiping at church in the morning as well as spending time with his family and congregation by taking a day of rest and focusing on the community aspects of the Christian faith that are important to him. And the Postal Service does not dispute that he sincerely holds that religious belief. I would also like to turn back to the effect on Mr. Tufeli and I would also like to point out that that was not contemporaneously complained about. There's no evidence in the record that there were contemporaneous complaints about the imposition on Mr. Tufeli and that fact issue is really not vetted by the district court and as well as the district court didn't consider the fact that postmaster Hess during the peak season could borrow other RCAs and this just goes to show that at a minimum there are numerous fact questions that should be resolved at a trial and remand at a minimum. We do believe that summary judgment should be granted in our favor but at a minimum a remand on the undue hardship question is warranted. If there are no further questions I thank the court for their consideration. All right well we thank you Mr. Tutunjian. We thank Ms. Finkelstein for the very very helpful oral arguments and excellent briefs in this case. We'll take the matter under advisement.